Good morning, Your Honor. May it please the Court, my name is Joshua Furman. I represent Objector John M. Zimmerman. I will briefly address the issues pertaining to economic analysis of the settlement consideration in this case. Mr. Frank will then address issues pertaining to the fees for the class counsel under Rule 23H. We are here to advocate that this Court address the question of what sufficient evidence of a non-cash component to a settlement actually is. We advocate that the Court address, have a bright line rule that indicates that a judge in addressing these questions must have substantial evidence of the value of a non-cash component of a class action settlement. We ask the Court to create this rule regardless of whether the non-cash component is a portion of the settlement or an option of the settlement that the class members can choose. The reason is that a non-cash component that requires the class member to go forward and have additional transactions has different kinds of value than cash does. The economic analysis we provide to the Court in our briefing indicates, and as well as that other courts have found in... So why does that matter if you have the cash option? Well, we say it does not. If you have a cash option, that doesn't affect how you evaluate the non-cash option. The non-cash option still needs evidence to be able to determine how it should be valued. The argument on the other side is that having the cash option gives you a proxy for how to place a value on the non-cash option. However, that means in this particular case, that meant that the trial court did not have any substantial evidence of what the actual value of the non-cash portion was. It was simply a presumption and a presumption that's not supported by economic analysis. In that situation, you're looking at a lack of evidence. You're looking at the absence of evidence. And as Judge George's colleague, Judge Hicks, wrote in the Sobel case, the trial court does not have the tools it needs in order to figure out how to evaluate the settlement value under Rule 23E. The … All right. We're paused. May I ask you one question? Are you receiving time for rebuttal? And how is your time divided? Yeah, I have about 53 seconds. Oh, all right. Thank you, Your Honor. The last point I would make in those few seconds is that the problems with coupon settlements that have been pointed to in cases like True, that even the class counsel points out in their brief, are the exact same kinds of problems that you have with gift cards as shown by an economic analysis. An economic analysis should be required of some level in order to provide substantial evidence that the trial court can use in determining the value of the settlement. Without that, it's an abuse of discretion because there's no evidence. I'll reserve time for rebuttal on my end and pass the torch to Mr. Frank. May it please the Court, Theodore H. Frank for the objector in 1215.705. I'd like to raise three questions of law relating to the Rule 23H award in this case. The Court erred by failing to apply Section 1712 of the Class Action Fairness Act. It held that the gift cards in this case were not coupons because they were gift cards. But as this Court has said in the past, one cannot resort purely to labeling as a subterfuge to avoid the thrust of a statute. And we've seen this ever since the Class Action Fairness Act has been passed. Nobody calls their coupons coupons anymore. They call them vouchers. They call them certificates. They call them e-coupons or, excuse me, e-certificates or rebates. But all of these things are still discounts on a proposed purchase from the defendant. And in this case, the proposed defendant isn't even somebody who did business with the class in the past. It's Walmart.com for a class of Netflix customers. Well, I take your point. And you can't get around the statute merely by changing the label. But gift cards do have a well-defined meaning in this market, don't you agree? No, because the gift cards are defined purely by what the settlement defines the gift It's still what it's not what there's any statutory definition is. It's what the settlement defines the cards as. And they have certain limitations. You can't sell them. You can only transfer them. They have other terms and conditions relating to the settlement website. Is there something that says you can't sell them? Yes. It's part of the settlement terms. You can transfer them. You cannot sell them. What? You mean you have to give them away? You can give them as a gift, but you're not allowed to put them on eBay or But can you sell them to your neighbor? According to the settlement, you cannot. Now, how is that enforced? I don't know. But there's no secondary market for these. So the only way you can transfer them is by inheritance or by gift? Honey, I love you so much. For Valentine's Day, I gave you a $12 Walmart.com gift card. It's a bad Valentine's Day. These are coupons under 1712a. And there's just nothing in the statute that says by renaming them, you get some other result. Now, certainly in the legislative history, it does make it clear that what they were trying to prohibit was forcing you to come in and use this as a partial payment or a down payment and forcing you to go back to the store and buy another item and use the card to buy a new item. And you do have to buy a new item. Now, the appellees say, well, you can use the $12 and buy something that's worth less than $12, and therefore it's not just a discount. But again, in the legislative history, there are all sorts of examples of coupons that were used for a full product. The coupons in Sinfuel versus DHL were for a free envelope mailer. In HP Inkjet in this very court, one could have taken the $8 coupons in that case and bought a $5 cable. So the fact that you could buy a full product, it still is an in-kind relief with respect to the defendant, and that is the crux of what makes something a coupon. Well, haven't most of the district courts that have considered this distinguished this type of card from the coupon? A number have at the behest of these sort of ex parte settlement presentations. And just as there was this huge problem of Cypre going running rampant before this court stepped in an option, this court needs to step in here because courts, district courts simply aren't following the language of 1712. And we see this on page 24 of the excerpt of record because the court says, well, this is closer to a cash settlement than a coupon settlement because there is a cash option, but that's completely divorced from the language of 1712A, which talks about a portion of the relief being coupon relief. There's no binary value that a settlement is either always a coupon settlement or a cash settlement. Right there in 1712, the language is if part of the relief of the settlement is going to be valued based on how many of those coupons are redeemed. Now, that may be administratively difficult, but that's what Congress wanted. They didn't like coupon settlements. Any court of appeals decided this question either way? Inkjet is the closest one because there the parties had an E certificate and everybody agreed it was a coupon. This is the first that I am aware of where somebody said we called it a gift card and therefore it's not a coupon. But all of the things they used to distinguish it from a coupon, well, it's $12 or the products are small value or it's non, there's no expiration date. All of these things just make it a slightly better coupon and if that goes to Rule 23E settlement fairness, is this real relief or is it illusory?  And the court saying that there's a cash option, again, right there that writes out 1712a's portion language. Congress specifically recognized the possibility that there are settlements that were partially coupons and partially something else. Moving on to my other two legal issues, and they're related. And they're part of this theme that's been happening in courts. In cases such as Bluetooth, 654F3935, Dennis v. Thomas, HP Inkjet, and then out of the circuit- I think it's Dennis v. Kellogg. I apologize. You're absolutely correct. And you understand why I made that statement? Yes, exactly. And out of the circuit in Dry Max Pampers, 724F3713, and in baby products, antitrust litigation, what courts have repeatedly said is, you have to look at the economic realities of the settlement in determining whether the fees are proportionate to what the class is actually recovering. And you have to look at what it is the class actually has in its hands at the end of the day. Class members are not indifferent between a dollar that's going to them and a dollar that happens to be in the settlement fund but is going to a third party. And here we have a settlement where the class is getting $5.2 million in cash. There's another $8.9 million in gift cards that might be $1 million, it might be $6 million, it might be $3 million worth to the class at the end of the day. It depends on how many are redeemed. And the attorneys are getting $8.5 million in fees plus expenses. And under the 25% benchmark, under Dennis v. Kellogg, that's clearly excessive as a percentage. That's exactly the sort of percentage that was held to be clearly excessive in Dennis v. Kellogg. But the court got there because it counted $4.7 million in settlement administration expenses as a class benefit even though the class never saw any of that. And even though the reason the administration costs were that high, nearly 20% of the settlement value, is because the parties agreed to throttle the cash relief. You could get the coupon if you claimed it online. But if you wanted a check, you had to print out a claim form, you had to fill it out by hand, you had to pay postage to mail it in, and then they would pay claims administrators to take those 300,000 claim forms and type them in. And then they have the data. And that was all to deter people from claiming the cash instead of the coupons. But it also had the effect of artificially inflating the administrative expenses. And that's not a benefit to the class. That's a cost to the class. But the court's counting it as a settlement benefit meant that the fees were inflated another $1.6 million. Well, couldn't you say that cost is to make it possible for members of the class to receive cash? Yes, but that's just a social cost of administering a settlement. And if the class council doesn't have the incentive to make it as efficient as possible, if they're not compensated by what the class actually receives, you have a settlement like this one where the class council doesn't care that there's all these extra millions of dollars that are being fitted away from the settlement fund to these third parties who are pretty friendly with class council generally. But in addition, it's not the case that a class member is indifferent between a settlement that pays $19 million to the settlement administrator and $1 million to the class and one that pays $1 million to the settlement administrator and $19 million to the class. Under the lower court's proposed rule and the appellee's proposed rule, those two settlements are identical, but class members don't treat those as identical. Class members won't think those as identical. I don't think it's identical whether I get a $60 check in a settlement and a one-tenth cent notice in the e-mail or whether the notice is FedExed to me by a singing telegram and I get no relief. I certainly prefer the cash to the singing telegram. So we ask that you follow the trends and create a legal rule that what the class actually receives matters here. And what the class received is disproportionate to the $8.5 million. What the attorneys received, the $8.5 million, was disproportionate to what the class received. I'd like to reserve the last four minutes for rebuttal. Thank you, Judge. Good morning, Your Honors. Todd Seaver on behalf of the plaintiffs' appellees. I think it's important to take 30 seconds right now and recognize that while this settlement is being challenged, it is the result of vigorous litigation. I mean, if the summary judgment argument today showed anything, it's that this was a vigorously contested litigation where the class counsel advanced over nearly $3.5 million out of pocket at risk of total loss investing in the prosecution of the case. We had a certified class, a litigated class, and the summary judgment order arrived close to about a month before trial. So what that tells you is this is not one of those settlements. It's not one of those settlements where two months after the amended complaint is filed, there's a settlement agreement, there's no investment in the litigation, no risk, and counsel gets fees and a class is offered worthless coupons. This isn't one of those settlements. Point in fact, the litigation efforts, we were able to wrestle Wal-Mart, which is no wallflower. They don't typically settle a lot of cases. You have dupes fee Wal-Mart for a reason. And we wrestled them to the settlement table and got value. And this is a partial settlement. It is still our intention to try this case against Netflix and we hope add to the recovery for the 35 million members of the Netflix subscriber class. There's two reasons, two main reasons, why this is not a coupon settlement. The first is this is a cash settlement. On its face, this is a cash settlement, all cash. Every single class member who claimed could have chosen the cash. The second reason is the features of this walmart.com gift card tell us this is not a coupon. So the fact that there's a pure choice to every class member, and the claim form is at the supplemental excerpt of record at page 26. This is a simple election. This is true whether it was online or whether it was a paper claim form that was being filled out. It was a simple choice. Check a box if you want cash or check this other box if you want the walmart.com gift card in the same amount as the cash would be. P.S., don't check both boxes. That happens. The cash, you have to mail it in and you have to give your social security numbers. Is that the difference between claiming and not claiming? Not entirely, Judge. You don't have to give your social security number, first off. That's an error. They're wrong when they say that. To claim cash, you do need to give the last four digits of your social security number. And there's reasons for that. It gets to fraud prevention down the line if it comes to that. It's a useful tool for the claims administrator if it needs to investigate. I wasn't criticizing. I'm just trying to see what the difference is. Okay. On the form, you get it by clicking on whatever you do on the Internet. And on the cash, you have to mail it in and you give your last four digits. Yes. And that costs the opposing counsel suggested that the administrative costs were not a benefit to the class. And I gather those costs are necessary to those who want to receive cash? Yes. Okay. You could have far lower administrative costs if you didn't offer cash, isn't it? That is correct. It could have been purely electronic, although I'm sure if it was all electronic, there was no possibility of using the mail, you know, printing a claim form and mailing it in. We'd face different objections because, you know. Well, then it would be all coupons in the view of your opponent. Well, I'm sure whatever we offer, it's going to be called a coupon by the objectors. That we can't worry about in this case. But I just wanted to get the facts. Yes. In the mailing part. Tell us in a summary fashion, what is the difference in your view between what they're offered here and an ordinary coupon? They're legion. It's fundamental. Well, don't give us legion, but the principle ones. First of all, the Walmart gift cards never expire. They are transferable. You're asking about that. And what does that mean? Who can you give it to? Essentially, it means you can give it away. But remember, these are folks who've chosen this in the first instance. They've expressed a preference. I want the gift card ostensibly to use it or, I guess, give it away. I mean, after all, they are prohibited from marketing it. True. You can't sell it on the secondary market. True. That is correct. And that is not unique to the Walmart.com gift cards offered in this settlement. That is true. If you or I go to Walmart.com and purchase a gift card today, those same rules apply. If you're a licensed reseller, you can sell it. So it speaks to what it is. You are actually, if you want a $100 or a $5 or a $50 gift card from Walmart, you give them that amount in cash. I'd like a $12 gift card. Here's $12 of my money. In exchange, you get a gift card. But in that feature, they are like coupons because generally coupons are restricted from resale in the secondary market. True. I don't know if that's true of all coupons. I think as a general matter, we can accept that perhaps the transferability here but not saleability would make it coupon-like, but there are so many other things that take this out of the definition of coupon. You can stack these together. They can be aggregated. As I said, they never expire. And you can buy an entire product with these, Walmart.com. Walmart is the largest retailer in the history of planet Earth. The website contains thousands of useful everyday consumer goods available right now for $12 or less, everything from diapers to clothing, headphones, almost everything under the sun. And so what this gets us to is the essential of why these gift cards are not coupons. The Objectives Council cites SinFuel. That's a useful definition, Judge Wood in the Seventh Circuit, also a definition adopted here in the Northern District. And the definition of coupon is just a discount on a proposed purchase. That's a direct quote from SinFuel. It also mirrors the Oxford English Dictionary definition of the word coupon. So a proposed purchase. Here's a particular product, a tube of toothpaste from Rite Aid. Now, if you get a coupon in another settlement, they call it a coupon. You can't go to the store that you're settling with and take your $12 and buy something with it. You have to buy something with more than $12. These gift cards, Judge? No, not these. The ordinary coupon. The ordinary coupon. The commonly accepted definition, recognizing the statute doesn't define the term, is, yes, just a discount. You know, there are coupons that are generally accepted that aren't just discounts. They are for products. So if there's a settlement that labels something a coupon, in your judgment, which you can get a full product, you would say that's not a coupon, right? I would say that's a factor. If you're going to be lacking a definition, which we lack, that would be a factor in assessing whether this is a coupon settlement that should then be subject to CAFA Section 1712 rules about the award of attorney's fees. It would be a factor. So another compelling thing about gift cards, store gift cards like the ones offered to the class here, if they chose it, the freedom to choose it over cash. One thing about these, these are governed and regulated by our country's central bank. The Federal Reserve, as of 2010, has adopted special rules that govern store gift cards because they recognize they are electronic transfers of funds, and they're regulated alongside debit card transactions, ATM transactions, overdraft protection services, because as the court in the Carlini v. United Airlines case has cited in our papers, recognized under the Electronic Funds Transfer Act and what's called Regulation E, governing store gift cards, store gift cards are nothing more than electronic promise of underlying funds, of underlying purchase power. I mean, to ask that we wait around, and they never expire, by the way, which is a feature. And so we may as well ask, you know, what's the practical outcome here? We may as well ask that we wait around to be sure that class members have actually used their $12 that they'll get here. It's the same thing. Once they have the $12 in their pocket, the class member has realized the value of the settlement. It's the same as if they have the $12 gift card in their pocket. At that moment, they have realized the value of their claim against the fund, $12 cash, $12 gift card. There's no need or practical purpose to wait for them to use the gift card. And for that practical reason alone, I don't think you can read these walmart.com gift cards into CAFA Section 1712. Would you respond to the argument? You initially started by talking about the option of taking cash, and I didn't hear you respond to the argument that that rationale eliminates the portion part of 1712A. Yes. Well, first, the response to that is the courts are required to look at the settlement agreement as a whole. So that gets back to what I first mentioned, that on its face, this settlement agreement offers the class cash. Every single one who made a claim could choose cash. Yes. But that doesn't deal with the language. That's why I was following up with the question. I don't understand. I frankly don't understand how you read out any partial, you know, part. We're not reading anything out of CAFA. All we're doing is saying these gift cards aren't coupons. Section 12 doesn't apply. I don't think we need to ask ourselves. No, I understand that part of your argument. But your argument, your initial argument, I thought, was that because this was a fully a cash settlement, they had the option of cash, then it didn't, even if they were coupons, it didn't matter. No. And I think it does matter. And so the question Mr. Frank raises is 1712A says a portion of the settlement is coupon. So if we assume for the sake of argument it's the gift cards are coupon, which I know you contest, where does that leave us? I think that leaves the Court in a very difficult spot, frankly. The good news is we don't have to go there. But assuming that, if you had a settlement where it was a pure coupon, like the kind in True v. American Honda or the Sobel v. Hertz rental car case that Judge Hicks dealt with, if it was a pure coupon or an option of cash and then some folks chose the coupon, I do think you'd be in a thorny question and somewhat of a straitjacket given this Court's ruling in H.P. Inkjet. So basically you're conceding that the, and it's a proper conception probably, is that the key question is whether this is a coupon or not. If it turns out to be a coupon, then the option of a cash settlement really is not relevant. If the Walmart.com store gift cards are a coupon as a matter of law, then, Your Honor, I think you're right. But as a practical matter, folks are in a straitjacket. And that also leads me to question the concept of redemption. You know, we've got to get these gift cards or coupons redeemed, which I find curious, especially in light of this Court's decision in H.P. Inkjet, which recognized a longstanding problem with coupons and redemption. And maybe this is a fault that we put at the feet of Congress in enacting CAFA, but footnote 6 of H.P. Inkjet recognizes the problem. The problem is, even if you have 100% redemption of coupons, it doesn't tell you a thing about the value received by the class that got the coupons. And that's because if you get a discount on a proposed purchase, let's say the settlement is with Rite Aid, and the coupon is $1 off this product or a series of products, if Rite Aid raises its prices by $1 on those products during the coupon redemption period, and even if everyone redeems them, have they received a value?  They haven't. And that points out the problem with coupons, but it also is useful to contrast these Walmart.com gift cards, because Walmart isn't raising its prices on thousands upon thousands of goods by $12. So the class members who choose these in the first instance, put them in their pocket, they've already got the benefit of the purchasing power. It's sitting in their wallet, just like $12 cash. Then if they go to use it, bingo. So I'd like to turn to the points about the valuation of the settlement. Counsel raised Dennis v. Kellogg, which Judge Thomas, I know you're familiar with, but as a quick reminder, that case, the attorney's fee was found unreasonable, the percentage award, because there had been practically no litigation effort made, no investment by class counsel of their own money to prosecute the case at risk of loss, and the percentage fee award, when the Lodestar cross-check was done, it was 4.3 times the Lodestar, the percentage fee award was 4.3 times the Lodestar. And it threw off all the obvious signals that that was an unreasonable fee. So the topic that's been raised is that the district court somehow made an error in valuing this settlement at $27.25 million. Now, it won't be that if you ground it and said this is an all-cash settlement, it's not worth a dollar less than $27.25 million, but even still, you get past how easy it is to determine the value on the face. Gift card value here is $12. The suggestion by Mr. Zimmerman's counsel is that the court should, this court should send the settlement back to the district court to receive evidence about, you know, without being specific, just as an economic analysis of the gift cards. That's completely unnecessary. In their papers, what they suggested was an academic article, the Offenberg paper, which said, gee, let's look at the resale value of gift cards online. There are certain sites that auction off Barnes & Noble cards and so forth. And, you know, let's just say they get 80, 85 percent of their resale value. That is a proxy for the direct evidence that Judge Hamilton had here. She had what economists call a perfect data set. She had 720,000 class members who, given the choice between cash or a Walmart.com gift card in the same amount, chose the gift card. Value, the question here is how does the class value what's being offered to them? Well, the folks, the 720,000 valued the gift card at least as much as the $12 in cash they were offered or else they would have chosen the cash. The turn to the issue of a percentage fee awarded against the common fund. It's 25 percent. It's a benchmark. The question is 25 percent of what? It's longstanding precedent here in the Ninth Circuit and elsewhere that it's against the total fund. Here that's 27.25 million. That's what the district court found. Costs such as notice to the class. Well, first let me start with the first incurred cost that the settlement pays, first incurred in terms of time is reimbursement of out-of-pocket litigation costs incurred by the class counsel. We're only seeking roughly half of what we've actually incurred. Without that expenditure of money to prosecute the case, there is no settlement fund for the benefit of the class. That is a direct benefit to the class and it should be counted for the purposes of calculating the percentage fee. Notice, claims administration, without expenditures on those items, the class never knows about the settlement. They can't claim their money. Those are direct benefits to the class, as this Court has held most recently, I think, in Staten v. Boeing. There's been no reason to overturn that precedent and none forwarded by objector's counsel. Right on time. I have 10 seconds. Yes. If there's no other questions, then I will ask the Court summarily affirm Judge Hamilton's orders that finally approve the settlement as fair, reasonable, and adequate. Now you have no seconds. Thank you, Your Honor. Thank you, counsel. Thank you, Your Honors. I'll be very brief in rebuttal. Mr. Seaver again says that the choice between cash and cards is a proxy for proof. Well, that's very well, but where's the evidence that you can make that correlation? It was not before the Court. To the contrary, the true decision actually points out three problems with gift cards that are the same as we have as we have, excuse me, three problems with coupons that are the same as we have with gift cards. Coupons require class members to do future business with the defendant. That's the same thing with the gift card. That reduces the inherent value of the gift card, even more so here where Netflix customers who are in the class are receiving Walmart gift cards. Don't be misled by the clock. You were supposed to have 1 minute, and it went up to 5. I think the balance is to Mr. Frank. Mr. Frank has 5 minutes also. No, he's got 4. Now it's 3.55. I'll simply make the point, Your Honors, that looking at the true decision, and which I think has a very good critique of what is wrong with coupon settlements, the economic factors, including breakage and upspending, which provide a windfall to the defendant, indicate that gift cards and coupons really are the same. Thank you. Thank you. Sinfield v. DHL creates a test for defining coupon, and this quote-unquote gift card fits within that test, and what they are proposing will create a circuit split with Sinfield. They say, well, but a full product isn't a discount, except the coupons in Sinfield were for a free product. So how can they say that it doesn't fit within the Sinfield test? I don't understand. State v. Boeing did not hold that notice was a benefit. It said in dicta that it could be a benefit. But aqueducts and the other cases we cite show that notice is a benefit, is a social cost and a benefit to the defendant because it creates the ability to enforce the waiver upon the class. It shouldn't be counted as a class benefit. Nobody picked the coupon knowing that it was going to be a $12 coupon. There are 40 million class members, 27 million to be divvied up, 15 million after all of the expenditures. When somebody makes the election, they don't know whether they're getting $1, $12, $20. They don't know what they're getting. All they know is that it's going to cost them 44 cents plus a lot of their time to fill out an application for a cash check, whereas they might be spending 44 cents in postage to get a 35-cent check. Plus there was a provision in the settlement that said if too many people ask for cash, we reserve the right not to give cash at all and do something else. So the class wasn't faced with an equal choice. Going back to the whole product issue, we discussed this on page 6 of the reply brief. The legislative history of Congress refers to several coupon settlements that were for whole products. Again, Sinfuel involved a whole product. That's not a reason to call the gift cards not a coupon. The $1.7 million in litigation expenditures were counted in the denominator, but not in the numerator. So the class council got $8.5 million, but only $6.8 million of that was counted towards the 25%. But the $1.7 million was counted as a class benefit, which meant that they got another $600,000 in fees. As a commission on the $1.7 million of expenditures they claimed in the settlement. Money is fungible. It's very easy to move money from Lodestar into expenses and expenses into Lodestar, especially in modern litigation when you're talking 15 million documents. You hire contract attorneys to do that. When it's advantageous to call those contract attorneys Lodestar, you see attorneys billing them out at several hundred dollars an hour. When it's advantageous to call it an expense, they say, well, we paid the temp agency $30 an hour, and it's a litigation expense. This is why in Dennis v. Kellogg, when it was $2 million in fees and expenses, they took that $2 million of fees and expenses and put it in the numerator, divided by the relief, and said 39% is too much. That's clearly excessive, was the Dennis v. Kellogg language. And it didn't say, well, it was $1.4 million in fees and $600,000 in expenses. It didn't even mention Lodestar in the amended opinion. It was purely the 39% factor. Now, going in, they can certainly come back down and say, we litigated this extra hard. We deserve an upward departure from the 25% benchmark. But that wasn't what they argued. They argued for a 25% benchmark. If the Court doesn't have any questions, I'm out of time. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: George, Reinhardt, Thomas